UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESUS QUEJADA POMARE,

v.                                    Case No. 8:03-cr-437-T-17MAP
                                              8:07-cv-691-T-17MAP

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. cv-1; cr-163).

BACKGROUND

On November 6, 2003, Quejada-Pomare and others were charged in a superseding indictment with possessing five kilograms or more of cocaine with the intent to distribute it, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. §§ 1903(a) and (g), 21 U.S.C. § 960(b)(1)(B)(ii), and 18 U.S.C. § 2 (Count One) and conspiring to possess five kilograms or more of cocaine with the intent to distribute it, while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. §§ 1903(a), (g), and (j) and 21 U.S.C. § 960(b)(1)(B)(ii) (Count

Two). Doc. cr-27. After entering into a plea agreement with the United States (Doc. cr-42), Quejada-Pomare pled guilty to Count One, Docs. cr-60, cr-65, cr-75, and cr-124 at 21.

In his plea agreement, Quejada-Pomare expressly waived the right to appeal his sentence, "directly or collaterally, on any ground . . . except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines . . . ." Doc. cr-42 at 12.

At the rearraignment hearing, the magistrate judge reviewed with Quejada-Pomare and his co-defendants the waiver and stipulation provisions included in their plea agreements. The magistrate judge confirmed that they understood the consequences of these provisions. As to the sentence appeal waiver, the magistrate judge explained the following:

> Each of your plea agreements at Page 12, Paragraph 5, has a section that I would like to speak to you about. It's called a plea [sic] of sentence waiver because you may not be familiar at all with our judicial process. All of you have the right to complain about your sentence to a higher court.
>
> Now, this is known as an appeal. And in your case that higher court is called the 11th Circuit of Court Appeals [sic] in Atlanta, Georgia.
>
> Now, by your plea agreement here, all of you are limiting your right to take an appeal. Now, you can only appeal if the Government appeals first or the judge gives you a sentence more than that permitted by the charging statute, which in your case because each of you faces a potential life sentence, would be impossible. Or the judge departs upward from the guideline range, the judge finds that would apply to the case, not what you have argued. For example, the important point as I said to note is you are limiting your right to take an appeal. Do you understand this? . . . .
>
> THE PETITIONER: Yes, sir.

Doc. cr-124 at 17-18.

As to the applicability of the sentencing guidelines, the magistrate judge stated:

2

Let me explain to you the process the Court will use in sentencing you

. . . . .

If your pleas are accepted, a probation officer will prepare a report called a presentence report and the judge will use this in sentencing you. This report includes information about your case, the facts of the case, how the guidelines are to be applied and the probation officer's opinion and some personal history about each of you, whether you have a prior criminal record, for example

. . . . .

Now, the sentencing judge, Judge Kovachevich, will decide what guidelines apply to your case. She will rule on any outstanding objections, decide what your guideline range is and then she will pass sentence accordingly.

Doc. 124 at 16. Quejada-Pomare indicated that he understood. Doc. cr-124 at 16.

On May 14, 2004, the Court sentenced Quejada-Pomare to 108 months imprisonment with credit for time served. Doc. cr-107 at 16. Quejada-Pomare directly appealed the final judgement to the United States Court of Appeals for the Eleventh Circuit, Appeal No. 04-12568. On appeal, Quejada-Pomare raised the following issues:

a. Whether the District Court erred in failing to grant a downward sentencing adjustment for role in the offense; and

b. Whether Quejada-Pomare's sentence was unconstitutional pursuant to *Blakely v. Washington*, 124 S.Ct. 2531 (2004).

On December 30, 2005, the United States Court of Appeals for the Eleventh Circuit dismissed Quejada-Pomare's appeal based on the waiver provisions of his plea agreement. *United States v. Quejada-Pomare*, No. 04-12568-DD (11th Cir. Dec. 30, 2004) (unpub.). Doc. cr-134. Quejada-Pomare petitioned the Supreme Court for a writ of certiorari. On May 2, 2005, the Supreme Court ordered his case to be remanded to the Eleventh Circuit for

reconsideration in light of *United States v. Booker*, 543 U.S. 220 (2005). *See Quejada-Pomare v. United States*, 544 U.S. 1016 (2005).  Upon remand, the Eleventh Circuit ordered supplemental briefing.

After reviewing the complete record, the Eleventh Circuit upheld its previous ruling and stated:

> . . . in waiving his right to appeal prior to the Supreme Court's decision in *Booker*, [Quejada-Pomare] waived no more rights after *Booker* than he did before *Booker*. That [Quejada-Pomare] waived his right to appeal on a ground that he did not know he had at the time he entered his plea does not invalidate an otherwise knowing and voluntary plea. *See United States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990).

> Finally, [Quejada-Pomare] stipulated that his sentence would be determined and imposed in conformance with the federal sentencing guidelines and agreed that this court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth and pursuant to the guidelines. Subsequent judicial decisions do not render such an affirmative stipulation involuntary or unknowing. *See United States v. Sanchez*, 269 F.3d 1250, 1283-85 (11th Cir. 2001) *(en banc)* (in light of *Brady v. United States*, 397 U.S. 742, 757 (1970)), rejecting argument that *Apprendi* invalidated defendants' guilty pleas).

> Accordingly, the previously entered order granting the government's motion to dismiss is re-instated, and the appeal is DISMISSED.

Doc. cr-157, pp. 4, 5,

On April 23, 2007, Quejada-Pomare timely filed the instant section 2255 motion (Doc. cv-1) claiming the following grounds for relief:

> a. Quejada-Pomare's sentence is unconstitutional in light of *Blakely, Booker* and various other cases wherein the Supreme Court held the United States Sentencing Guidelines can be used only as advisory guidelines (Petitioner's Ground 1, see Doc. cv-1, p. 5);

> b. The Court erred by not giving Quejada-Pomare a downward departure for a minor or minimal role in the offense (Petitioner's Ground 2, see Doc. cv-1, p. 5); and

4

c. Quejada-Pomare received ineffective assistance of counsel (Petitioner's Ground 3, see Doc. cv-1, p. 5).

Discussion

A review of the records demonstrates that, for the following reasons, the motion to vacate must be denied.

**Appeal Waiver**

As discussed above, Quejada-Pomare waived his right to appeal his sentence, directly or collaterally. Quejada-Pomare now files the instant motion challenging his sentence claiming his sentence is unconstitutional in light of *Blakely, Booker* and various other cases wherein the Supreme Court held the United States Sentencing Guidelines can be used only as advisory guidelines (Ground a), and the Court erred by not giving Quejada-Pomare a downward departure for a minor or minimal role in the offense (Ground b). The right to appeal is a statutory right that can be waived if waived knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1345-51 (11th Cir. 1993). For this Court to enforce a sentence appeal waiver, the United States need only demonstrate either (1) that the district court specifically questioned the defendant about the provision during the Fed. R. Crim. P. 11 colloquy, or (2) that it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. *Id.* at 1351. The critical inquiry is not the extent to which the Court reviewed the sentence appeal waiver but the extent to which the record demonstrates the defendant's knowledge and understanding of the waiver. *See id.* (the defendant's knowledge and understanding of the waiver are among the components that constitute the core concerns of the defendant's right to be aware of the direct consequences of his guilty plea).

5

In this case, the Court reviewed the appeal waiver provision contained in the plea agreement with Quejada-Pomare during the Fed. R. Crim. P. 11 colloquy, including the narrow exceptions to the appeal waiver petition. Doc. cr-124 at 17-18. Quejada-Pomare acknowledged he understood the waiver. Further, prior to his guilty plea hearing, Quejada-Pomare initialed each page of the plea agreement demonstrating he had reviewed and understood each page. Doc. cr-42. Thus, the waiver bars Quejada-Pomare from collaterally challenging anything except an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines. Quejada-Pomare's claims in Grounds a and b do not fall within any of the exceptions.

This Court will not allow Quejada-Pomare to in contravention of the plain meaning of his plea agreement and to thereby deny the United States the benefit for which it bargained. *United States v. Buchanan,* 131 F.3d 1005, 1008 (11th Cir. 1997). *Nunez v. United States,* --- F.3d ---, 2007 WL 2177125 (7th Cir. 2007)(When a defendant violates a plea agreement by appealing despite a promise not to do so, the prosecutor may withdraw concessions made as part of the bargain*.); United States v. Whitlow,* 287 F.3d 638 (7th Cir. 2002) (defendant's breach of promise in plea agreement not to appeal except as to issue of which of two versions of the Sentencing Guidelines applied would entitle prosecutor on remand to reinstate any of charges that were dismissed pursuant to the plea agreement); *United States v. Hare*, 269 F.3d 859 (7th Cir. 2001)

**PRIOR RESOLUTION - Ground a**

Prior resolution bars reconsideration of Quejada-Pomare's claim that his sentence is unconstitutional in light of *Blakely, Booker* and various other cases wherein the Supreme

Court held the United States Sentencing Guidelines can be used only as advisory guidelines. See Doc. cv-2, pp. 4-9. Quejada-Pomare raised this claim on direct appeal and, as discussed above, the Eleventh Circuit resolved the issue against him on April 28, 2006. Although the Eleventh Circuit dismissed Quejada-Pomare's direct appeal based on the sentence appeal waiver contained in his plea agreement, the Supreme Court remanded it to the Eleventh Circuit to decide this specific issue, relating to *Booker.* The Eleventh Circuit's holding is discussed above. Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a Section 2255 proceeding. *Davis v. United States*, 417 U.S. 333 (1974); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).

Quejada-Pomare has established no extraordinary circumstance that would justify reconsideration of this claim. *See Schlup v. Delo*, 15 S. Ct. 851 (1995); *Davis v. United States*, 417 U.S. 333 (1974). Therefore, Quejada-Pomare's claim is procedurally barred.

**PROCEDURAL DEFAULT - Ground b**

Procedural default bars Quejada-Pomare's claim that the Court failed to grant him a downward departure for his mitigating role in the offense. See Doc. cv-2, pp. 10-13. Although this claim was raised in his initial appellate brief, Attachment 1, his appeal was dismissed and this issue was not addressed by the Eleventh Circuit. Thus, Quejada-Pomare is not entitled to relief because he has procedurally defaulted this claim. Ordinarily, claims that previously were available and were not raised on direct appeal are procedurally defaulted and barred from consideration on collateral review absent a showing of cause and actual prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982); *McCoy v. United States*, 266

F.3d 1245, 1258 (11th Cir. 2001), *cert. denied*, 122 S.Ct. 2362 (2002). The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley*, 523 U.S. at 623; *Jones v. United States*, 153 F.3d 1305, 1307-08 (11th Cir. 1998).

"Cause" is cause for the procedural default, a recognized reason for failure to raise the claim previously. Cause requires a showing of some external impediment preventing counsel from constructing or raising the claim. *Weeks v. Jones*, 52 F.3d 1559, 1561 (11th Cir.), *cert. denied*, 115 S. Ct. 1841 (1995) (citing *McCleskey v. Zant*, 499 U.S 467 (1991)). Ordinary mistakes, even significant mistakes of counsel, are not cause. *See Murray v. Carrier*, 477 U.S. 478, 487-88 (1986).

"Actual prejudice" is prejudice that impacts constitutional or other fundamental rights. *United States v. Frady*, 456 U.S. 152, 166 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). The burden of demonstrating actual prejudice is greater than the burden of demonstrating plain error. *Id.*

Quejada-Pomare asserts his "cause" for failing to raise this issue previously is that his counsel was ineffective. As discussed in the next section, Quejada-Pomare fails to demonstrate that his counsel was ineffective. Moreover, even if Quejada-Pomare could demonstrate cause, he would fail to show any resulting prejudice.

In the instant case, Quejada-Pomare's counsel sought a downward departure at sentencing for Quejada-Pomare's role in the offense, claiming Quejada-Pomare was "the last person on the chain for delivery." Doc. cr-107, pp. 5-7. In response to the Court's inquiry, the probation officer stated he had "seen no information or evidence showing that [Quejada-Pomare] is less culpable than the other three defendants in this case." *Id.* at 7. The government added that Quejada-Pomare "was the mechanic on the go-fast, an

important role. . ." Further, the government noted that Quejada-Pomare had been "paid the same as the other crew members and he [had not] met his burden under DeVaron." *Id.* at 7-8.

A defendant seeking a reduction bears the burden of proving, by a preponderance of the evidence, that he is entitled to it. *United States v. DeVaron*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). In *DeVaron*, 175 F.3d at 940-45, the Eleventh Circuit set forth a two part analysis for a district court to employ in determining whether a mitigating role reduction is warranted. First, the district court must measure the defendant's role against the relevant conduct for which he has been held accountable; second, the court must measure the defendant's role as compared to that of other identifiable or discernable participants in his relevant conduct. *Id.* at 940. As to the first factor, the *DeVaron* Court explained: "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable--not a minor role in any larger criminal conspiracy--should the district court grant a downward adjustment for minor role in the offense." *Id.* at 944. As to the second factor, "the district court should look to other participants only to the extent that they are identifiable or discernable from the evidence." *Id.* at 944. Quejada-Pomare has not satisfied the first part of the DeVaron analysis.

Outside of his argument on the law, Quejada-Pomare merely states his role in the offense was that of a mechanic on the vessel, not that of an organizer, leader or supervisor. Doc. cv-2, pp. 12-13. He does not attempt to show how his role was less culpable than that of his co-defendants. Regarding Quejada-Pomare's claim that he is entitled to a downward departure for "minor role," he has not demonstrated that he was less than an average participant. Accordingly, Quejada-Pomare is not entitled to relief from his sentence.

Additionally, it appears Quejada-Pomare is generally seeking a downward departure due to extraordinary circumstances, relying on *United States v. Johnson,* 964 F.2d 124, 125 (2nd Cir. 1992). Doc. cv-2, p. 14. In *Johnson*, the Court determined that the following facts constituted an extraordinary family circumstance: the defendant "was solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter." *Id.* at 129. In approving a downward departure in this circumstance, the Court stated: "The rationale for a downward departure here is not that [the defendant's] family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing." *Id.*

Regarding Quejada-Pomare's own circumstances, Quejada-Pomare states he comes from a poor family, has no education, and his children are suffering a financial hardship without him. Doc. cv-2, p. 14. However, the facts in his PSR (dated April 9, 2004), to which he did not object, state that he had two children: a 15-year old daughter (now eighteen) and a 9- year old son (now twelve). Because the mother of his children had died from cancer, his daughter was living with family members in Cartagena, Colombia, and his son was living with grandparents. Quejada-Pomare told the probation officer preparing the report that her illness had caused severe financial hardship for them. See PSR, p. 6, ¶ 52. Quejada-Pomare does not state in his section 2255 motion that these arrangements have changed.

A defendant's choice to participate in a crime almost always proves harmful to his family, and rarely constitutes a reason for a district court to deviate from the applicable sentencing guidelines range. See USSG §5H1.6 ("In sentencing a defendant . . . family ties

and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."); *accord United States v. Allen,* 87 F.3d 1224, 1225 (11th Cir. 1996) (finding that a defendant with the role of primary caretaker for his 70-year-old father with Alzheimer's and Parkinson's diseases is not "extraordinary" and does not merit downward departure); *United States v. McClatchey*, 316 F.3d 1122, 1130 (10th Cir. 2003) ("The fact that a defendant cares for a family member with a mental and physical disability is not by itself sufficient to make the circumstances "exceptional"" so that a downward departure was warranted). Consequently, Quejada-Pomare is not entitled to a reduction in sentence on the basis of extraordinary circumstances.

**INEFFECTIVE ASSISTANCE OF COUNSEL - Ground c**

Quejada-Pomare claims he received ineffective assistance of counsel when counsel (1) failed to fully explain the appeal waiver contained in his plea agreement; (2) failed to argue for a downward departure based on collateral consequences; (3) made a poor argument for downward departure for "minor role," and (4) failed to advise Quejada-Pomare he faced a mandatory minimum sentence.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective

11

standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690.  Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

12

**Ineffective Assistance of Counsel For Plea**

The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill*, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

Quejada-Pomare's claim that counsel failed to fully explain the appeal waiver contained in his plea agreement is without merit. At his guilty plea hearing, the Court specifically addressed the waiver with Quejada-Pomare. Quejada-Pomare agreed he understood the waiver. Doc. cr-124, pp. 17-18. Furthermore, Quejada-Pomare advised the

13

Court that he had reviewed his decision to enter his guilty plea with his counsel. Doc. cr-124, p. 12. Moreover, the Eleventh Circuit has held that Quejada-Pomare's guilty plea waiver was valid when it dismissed Quejada-Pomare's appeal. *Quejada-Pomare v. United States*, 544 U.S. 1016 (2005). Even if counsel did not fully explain the waiver to Quejada-Pomare, Quejada-Pomare cannot show he was prejudiced by the alleged errors of counsel because the record is clear that Quejada-Pomare did, in fact, understand the waiver before entering his guilty plea.

As to Quejada-Pomare's allegation that counsel failed to argue for a downward departure based on collateral consequences and made a poor argument for downward departure for "minor role," Quejada-Pomare is not entitled to relief on these grounds. Although Quejada-Pomare does not identify which specific "collateral consequences" to which he is referring, the Court assumes he is referring to family circumstances addressed in his supporting memorandum of law. Doc. cv-2, pp. 14-16. As demonstrated above, Quejada-Pomare is not entitled to downward departures on either of these grounds, thus, he fails to meet the prejudice prong of *Strickland.*

Quejada-Pomare's claim that his counsel failed to advise him that he faced a mandatory minimum sentence is without merit as well. Even if counsel failed to advise Quejada-Pomare as such, the Court did prior Quejada-Pomare entering his guilty plea when it review the penalties:

> Let me review with you the penalties for Count I. The count that you say that you wish to plead guilty to, that count is punishable by a mandatory/minimum term of imprisonment of ten years and it carries a maximum sentence of up to life in prison.

Doc. cr-124, p. 14.

Therefore, because Quejada-Pomare has failed to demonstrate any prejudice because of counsel's actions, he has failed to meet both *Strickland* prongs, and his claims of receiving ineffective assistance of counsel have no merit.

Accordingly, the Court orders:

That Quejada-Pomare's motion to vacate (Doc. cv-1; cr-163) is denied, with prejudice. The Clerk is directed to enter judgment against Quejada-Pomare in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

15

ORDERED at Tampa, Florida, on September 10, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA:  Arthur Lee Bentley, III
Jesus Quejada Pomare

16